## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

TRISTA KING,

                Plaintiff,

v.                                      CIVIL ACTION NO. 2:15-cv-07236

IBEX GLOBAL,

                Defendant.

### MEMORANDUM OPINION & ORDER

Pending before the court is the defendant's Motion to Compel Arbitration and to Stay [ECF No. 7] ("Def.'s Mot.") filed by the defendant, IBEX Global. The Motion is ripe for review because the plaintiff, Trista King, has not filed a timely response. For the reasons below, the Motion is **GRANTED**.

### I.    Background

On August 3, 2012, the plaintiff entered into an agreement entitled "Direct Dialogue Program and Mutual Agreement to Mediate/Arbitrate Acknowledgement and Acceptance" ("Agreement") with the defendant. The parties "agree[ed] to forgo the traditional litigation system in favor of binding arbitration." Def.'s Mot. Ex. A, at 8 [ECF No. 7-1]. More specifically, the Agreement reads as follows:

> The [defendant] and [the plaintiff] mutually consent to the resolution, by final and biding arbitration, of any and all claims or controversies   .

. . that the [defendant] may have against [the plaintiff] or that [the plaintiff] may have against the [defendant] or its officers, directors, partners, owners, employees, or agents in their capacity as such or otherwise, whether or not arising out of the employment relationship (or its termination), including but not limited to, any claims arising out of or related to this Agreement to Arbitrate . . . of the breach thereof.

*Id.*

Though the parties do not agree on when the plaintiff was hired and when the plaintiff was fired, there is no dispute regarding whether the plaintiff entered into the Agreement with the defendant prior to the events serving as the basis for her Complaint.[1] According to the plaintiff's Complaint, the defendant hired the plaintiff as "Internet Technical Support" sometime in or around August 2013. Compl. ¶ 3 [ECF No. 1-1].[2] During her employment, the plaintiff "became the victim of unfair treatment due to her gender." *Id.* ¶ 5. She "became the victim of a hostile work environment" because she was "subjected to sexual innuendoes." *Id.* ¶ 8. She was sexually harassed by a male coworker who "touched [her] breast without her consent." *Id.* ¶ 14. In the end, the defendant terminated the plaintiff's employment sometime around February 8, 2014.

Seeking redress for these alleged wrongs, the plaintiff filed her Complaint against the defendant in Circuit Court of Kanawha County, West Virginia. The

---

[1] According to the defendant, the plaintiff was last employed by the defendant from September 12, 2012, to February 13, 2013. Def.'s Mot. Ex. A, at 3. Additionally, although the plaintiff did not discuss her prior employment with the defendant, the defendant submits the plaintiff was initially hired on November 22, 2010; then "separated from employment" on August 3, 2012; subsequently hired again on August 9, 2012; and then "separated from employment" again on August 23, 2012. *Id.* at 2. As discussed below, the exact timing of the plaintiff's employment is irrelevant considering the scope and duration of the Agreement.

[2] The facts presented here are those alleged in the Complaint [ECF No. 1-1].

2

defendant removed the case to federal court on June 3, 2015. Notice of Removal [ECF No. 1]. The defendant then filed its Motion to Compel Arbitration and to Stay, arguing the plaintiff's claims fall under the Agreement, which is governed by the Federal Arbitration Act ("FAA"). Accordingly, the defendant asks the court to compel arbitration and to stay these proceedings as mandated by the FAA.

## II.    Legal Standard

The FAA provides that written arbitration agreements involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA embodies "a congressional declaration of a liberal federal policy favoring arbitration agreements" and "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). A court must give "due regard" to this federal policy favoring arbitration and should resolve "ambiguities as to the scope of the arbitration clause itself in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

If a court determines that an arbitration agreement is governed by the FAA, it must enforce the agreement and stay any suit or proceeding pending arbitration of any issue "referable to arbitration under such an agreement." 9 U.S.C. § 3. This provision is mandatory; a district court "has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall

3

within its purview." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002). A party seeking to compel arbitration and stay proceedings must establish four elements:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [nonmoving party] to arbitrate the dispute.

*Id.* at 500–01 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).

## III.   Discussion

*First*, a clear dispute exists between the parties, as evidenced by the plaintiff's claims against the defendant and the defendant's denial of the plaintiff's allegations. *See Adkins*, 303 F.3d at 500 (requiring "the existence of a dispute between the parties"). *Compare* Compl., *with* Def.'s Answer [ECF No. 4].

*Second*, the Agreement requires the parties to arbitrate the plaintiff's claims and remains in operation despite any breaks in the plaintiff's employment with the defendant. *See Adkins*, 303 F.3d at 500–01 (requiring "a written agreement that includes an arbitration provision which purports to cover the dispute"). The Agreement expressly applies to any claim the plaintiff has against the defendant "whether or not arising out of the employment relationship (or its termination)." Def.'s Mot. Ex. A, at 8. This language encompasses the plaintiff's claims because all

4

of her claims are against the defendant and arise from her employment[3] Additionally, regardless of any breaks in the plaintiff's employment with the defendant, the Agreement was in effect at the time of the events alleged in the Complaint. Clearly, the plaintiff agreed to arbitrate any claims before the alleged incidents took place. *Compare id.* at 10 (evidencing the plaintiff signed the Agreement on August 3, 2012), *with* Compl. ¶¶ 3, 17 (alleging her employment began in 2013 and ended in 2014). Also, the Agreement would "survive the termination of [the plaintiff's] employment. It [could] only be revoked or modified in writing signed by the parties, which specifically states intent to revoke or modif[y] this Agreement." Def.'s Mot. Ex. A, at 9. Because there is no evidence of modification or revocation and because it was not set to expire,[4] the Agreement remained in force during the plaintiff's alleged 2013–2014 term of employment serving as the basis for her Complaint.

---

[3] Specifically, each count of the Complaint concerns the actions of the plaintiff's coworkers or the defendant in the workplace. In Count One, the plaintiff alleges she "became the victim of unfair treatment due to her gender" because she "was subjected to disciplinary action when male employees who participated in the same conduct were not disciplined." Compl. ¶ 5. In Count Two, the plaintiff alleges she "became the victim of a hostile work environment in that [she] was subjected to sexual innuendoes." *Id.* ¶ 8. In Count Three, the plaintiff alleges she "was subjected to sexual harassment" when a male coworker "touched [her] breast without her consent." *Id.* ¶ 14. In Count Four, the plaintiff alleges she was retaliated against by the defendant and the defendant "terminated her on or around February 8, 2014." *Id.* ¶ 17. In Count Five, the plaintiff alleges the defendant's conduct was "outrageous and intentional." *Id.* ¶ 20.

[4] Similarly, other courts have determined an arbitration agreement that does not expire by its own terms will remain in effect regardless of whether the employee is terminated and subsequently renews his or her employment. *See, e.g.*, *Hoenig v. Karl Knauz Motors, Inc.*, 983 F. Supp. 2d 952, 964 (N.D. Ill. 2013) ("Without an express expiration date or written modification . . . [the employee] has not carried her burden to demonstrate that the Agreement does not cover the claims at issue . . . .").

*Third*, the Agreement involves interstate commerce. *See* 9 U.S.C. § 2 (requiring a transaction "involving commerce"); *Adkins*, 303 F.3d at 501 (requiring "the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce"). The Supreme Court has broadly interpreted this language, concluding that by using the word "involving," Congress intended "to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause." *Perry v. Thomas*, 482 U.S. 483, 490 (1987). The word "involving," the Supreme Court has said, "is indeed the functional equivalent of 'affecting.'" *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274 (1995). According to the defendant, "[i]t is headquartered in Washington, D.C.," "has offices in five countries," and has "call centers located throughout the United States and around the world." Def.'s Mot. Ex. A, at 1. Considering this economic activity and the expansive meaning of "involving commerce," the plaintiff's employment constitutes a transaction involving interstate commerce.

*Fourth*, the plaintiff has failed to submit to arbitration. *See Adkins*, 303 F.3d at 501 (requiring "the failure, neglect or refusal of the [nonmoving party] to arbitrate the dispute"). The defendant represents that it "sent correspondence to Plaintiff's counsel that advised that Plaintiff's claims are subject to mandatory arbitration." Def.'s Mem. in Supp. of Def.'s Mot. 11 [ECF No. 8].[5] There is no indication the plaintiff did or did not receive this correspondence. In any event, considering the

---

[5] In support of this representation, the defendant cites to correspondence filed as Exhibit C; Exhibit C was not filed with the Motion.

6

plaintiff's choice to forego arbitration in favor of filing her Complaint—and in the absence of any response to the Motion by the plaintiff—the plaintiff has failed to submit her claim to arbitration as she agreed.

*Finally*, having established the existence of the four factors set forth in *Adkins*, thus concluding that the FAA applies, I consider whether the Arbitration Agreement is valid under West Virginia's general principles of contract law. *See* 9 U.S.C. § 2 (providing an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"); *Am. Gen. Life & Accident Ins. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) ("Although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts."). In West Virginia, "[i]t is presumed that an arbitration provision in a written contract was bargained for and that arbitration was intended to be the exclusive means of resolving disputes arising under the contract." *State ex rel. Clites v. Clawges*, 685 S.E.2d 693, 700 (W. Va. 2009) (quoting syl. pt. 3, *Bd. of Educ. of the Cnty. of Berkeley v. W. Harley Miller, Inc.*, 236 S.E.2d 439 (W. Va. 1977)). The plaintiff has not offered any reason to depart from this presumption, and the court finds none. Accordingly, the court **GRANTS** the defendant's Motion.

### IV.    Conclusion

The defendants' Motion to Compel Arbitration and to Stay [ECF No. 7] is **GRANTED**. The court **DIRECTS** the parties to proceed to arbitration consistent

with the terms of the Arbitration Agreement and **STAYS** all proceedings in this action pending arbitration until further order of this court.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court also **DIRECTS** the clerk to place the case on the inactive docket.

ENTER:      October 20, 2015

_____

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

8